**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HERMAN BENSON, JR., Individually and On Behalf of All Others Similarly Situated**,** | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | C.A. No. 3:08-CV-01735-G |
| CSA – CREDIT SOLUTIONS OF AMERICA, INC.**,** | §<br>§<br>§ | |
| Defendant. | | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO VACATE ARBITRATOR'S CLAUSE CONSTRUCTION AWARD
OR STAY THE PROCEEDINGS PURSUANT TO 9 U.S.C. §§ 10, 12**

John L. Collins
SEYFARTH SHAW LLP
State Bar No. 00796025
700 Louisiana Street, Suite 3700
Houston, Texas  77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile
jcollins@seyfarth.com

*Attorney-in-Charge for Defendant*

# TABLE OF CONTENTS

I.   Preliminary Statement .................................................................................................1

    A.   Jurisdiction ..................................................................................................2

    B.   Procedural History .......................................................................................2

        1.   Proceedings Before This Court ...................................................2

        2.   Proceedings Before The AAA .....................................................3

        3.   The Arbitrator's Clause Construction Award ..............................3

III.  Legal Argument ...........................................................................................................4

    A.   The Arbitrator Lacked Jurisdiction To Issue the Award. ...........................4

        1.   Until 2003, the Fifth Circuit Required that Courts—Not
             Arbitrators—Determine Class-Arbitration Issues.......................5

        2.   A Fifth Circuit Panel Misreads *Bazzle* and Concludes That It
             Overruled Existing Precedent. ....................................................6

        3.   Pursuant to the Rule of Orderliness, the Original Rule Governs and
             this Court Must Determine Whether Class Arbitration Is Permitted..........9

    B.   The Arbitrator Exceeded His Powers By Ordering Class Arbitration In
        The Face Of A Silent Agreement..............................................................10

        1.   Vacatur Is Appropriate Where, as Here, an Arbitrator Exceeds His
             Powers.......................................................................................10

        2.   An Arbitrator Exceeds His Powers When He Goes Beyond His
             Contractual Mandate.................................................................11

        3.   Under *Stolt-Nielsen*, Mere Silence Does Not Constitute Consent to
             Class Arbitration—to the Contrary, Silence Provides "Reason To
             Doubt" that any Such Consent Exists. .......................................12

    C.   The Arbitrator Exceeded His Powers by Finding Consent Even Though He
        Conceded that the Agreement Is Silent and the Parties Never Discussed
        Class Arbitration. .....................................................................................15

    D.   The Arbitrator Manifestly Disregarded Governing Law by Requiring Class
        Arbitration................................................................................................16

        1.   Manifest Disregard Survives as a Basis for Vacatur. ...............17

2.      The Arbitrator Acted in Manifest Disregard of the Law. .........................18

     a.      The Arbitrator's Analysis of the "Any Dispute" Language Was Contrary to the Applicable Law......................................................18

     b.      The Arbitrator Acted Contrary to Texas Law by Inserting an Additional Provision into the Agreement Even Though the Parties Did Not So Clearly Contemplate it that They Deemed it Unnecessary To Express It............................................................20

     c.      The Arbitrator's Reliance On *Expressio Unius Est Exclusion Alterius* Is Contrary to Texas Law. ................................................21

     d.      The Arbitrator Had No Legal Basis To Suggest that CSA Endorsed Class Arbitration by Compelling Arbitration. ..............................23

     e.      For the Reasons Identified in *Stolt-Nielsen*, the Award Results in a Significant Injustice to CSA. .......................................................23

E.      If this Court Denies Vacatur, It Should Stay the Arbitration Pursuant to 9 U.S.C. § 12 Pending Appeal of this Order Under 9 U.S.C. § 16..........................24

IV.      Conclusion ....................................................................................................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Centennial Ins. v. Nat'l Cas. Co.*,
   951 F.2d 107 (6th Cir. 1991) ..................................................................................6

*Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*,
   487 F.3d 255 (5th Cir. 2007) ...........................................................................12, 13

*Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*,
   918 F.2d 1215 (5th Cir. 1990), *cert. denied*, 501 U.S. 1206 (1991)...................11, 12

*Apache Bohai Corp., LDC v. Texaco China BV*,
   480 F.3d 397 (5th Cir. 2007) .................................................................................11

*Baesler v. Cont'l Grain Co.*,
   900 F.2d 1193 (8th Cir. 1990) ................................................................................6

*Brook v. Peak Int'l, Ltd.*,
   294 F.3d 668 (5th Cir. 2002) .................................................................................11

*Brown v. Witco Corp.*,
   340 F.3d 209 (5th Cir. 2003) .................................................................................12

*Bruce Hardwood Floors v. UBC, So. Council of Indus. Workers, Local
   Union No. 2713*, 103 F.3d 449 (5th Cir. 1997), *cert. denied*, 522 U.S. 928 (1997) ...............11

*Citigroup Global Markets, Inc. v. Bacon*,
   562 F.3d 349 (5th Cir. 2009) .................................................................................18

*Coffee Beanery, Ltd. v. WW, L.L.C.*,
   300 Fed.App'x. 415 (6th Cir. 2008), *cert. denied*, 130 S.Ct. 81 (2009)...................18

*Comedy Club, Inc. v. Improv West Assocs.*,
   553 F.3d 1277 (9th Cir.), *cert. denied*, 130 S.Ct. 145 (2009)................................18

*Connecticut Gen. Life Ins. Co. v. Sun Life Assur. Co. of Can.*,
   210 F.3d 771 (7th Cir. 2000) ...................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...............................................................................................11

*Del E. Webb Constr. v. Richardson Hosp. Auth.*,
   823 F.2d 145 (5th Cir. 1987) ..............................................................................5, 10

*Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial
   Ass'n*, 889 F.2d 599 (5th Cir. 1989), *cert. denied,* 498 U.S. 853 (1990)...............11

iii

*Dvorken Family Ltd P'ship v. Martin Marietta Materials, Inc.*,
  No. SA-03-CA-0031 FB, 2004 WL 377537 (W.D. Tex. Jan. 6, 2004) ...................................24

*Fuller v. Phillips Petroleum Co.*,
  872 F.2d 655 (5th Cir. 1989) ...............................................................................................22

*Gammaro v. Thorp Consumer Disc. Co.*,
  828 F. Supp. 673 (D. Minn. 1993), *appeal dismissed by* 15 F.3d 93 (8th Cir. 1994) ..............6

*Glover v. IBP, Inc.*,
  334 F.3d 471 (5th Cir. 2003), *rehearing and rehearing en banc denied*, 77 Fed.Appx.
  289 (5th Cir. 2003)................................................................................................................12

*Gov't of United Kingdom v. Boeing Co.*,
  998 F.2d 68 (2d Cir. 1993)......................................................................................................6

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
  130 S.Ct. 2847 (2010)............................................................................................................9

*Gray v. Conseco, Inc.*,
  No. SA CV 00-322 DOC (EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000),
  *clarification denied*, No. SA CV 00-322 DOC (EEX), 2001 WL 1081347 (C.D.Cal.
  Sept. 6, 2001 ..................................................................................................................20, 21

*Green Tree Financial Corporation v. Bazzle*,
  539 U.S. 444 (2003)................................................................................................5, 7, 9, 10

*Hall Street Assocs. L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008)..............................................................................................................18

*Hand v. Chiropractic USA*,
  Cause No. 2:07-CV-014-J, 2007 WL 1149915 (N.D. Tex. Apr. 13, 2007)............................11

*Herrington v. Union Planters Bank, N.A.*,
  113 F. Supp. 2d 1026 (S.D. Miss. 2000), *affirmed*, 265 F.3d 1059 (5th Cir. 2001).................5

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  300 F. Supp. 2d 1107 (D. Kan. 2003) .....................................................................................21

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
  548 F.3d 375 (5th Cir. 2008) .................................................................................................10

*Jock v. Sterling Jewelers Inc.*,
  Case No. 08-CV-2875 (S.D.N.Y. Jul. 26, 2010) .............................................................21, 24

*Kutka v. Temporaries, Inc.*,
  568 F. Supp. 1527 (S.D. Tex. 1983) ......................................................................................22

*Marsh v. First USA Bank, N.A.*,
   103 F. Supp. 2d 909 (N.D. Tex. 2000) .................................................................20

*McCarthy v. Providential Corp.*,
   No. C 94-0627 FMS, 1994 WL 387852 (N.D. Cal. Jul. 19, 1994), *cert. denied*, 525
   U.S. 921 (1998)...........................................................................................................6

*Moses H. Cone Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1982)......................................................................................................11

*Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*,
   343 F.3d 355 (5th Cir. 2003) ...........................................................................7, 8, 9, 10

*Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*,
   873 F.2d 281 (11th Cir. 1989) ....................................................................................6

*Puleo v. Chase Bank USA, N.A.*,
   605 F.3d 172 (3d Cir. 2010) (*en banc*) .......................................................................7

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)......................................................................................................7

*Scout.com, LLC v. Bucknuts, LLC*,
   No. C07-1444 RSM, 2007 WL 4143229 (W.D. Wash. Nov. 16, 2007), *order
   clarified*, No. C07-1444 RSM, 2007 WL 4510294 (W.D. Wash Dec. 18, 2007)....................21

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
   130 S.Ct. 1431 (2010)................................................................................................20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   130 S.Ct. 1758 (2010).....3, 4, 5, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25,
   .......................................................................................................................26

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
   435 F. Supp. 2d 382 (S.D.N.Y. 2006)......................................................................21

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
   548 F.3d 85 (2d Cir. 2008)........................................................................................18

*Teague v. City of Flower Mound*,
   179 F.3d 377 (5th Cir. 1999) .....................................................................................10

*U.S. Postal Serv. v. Am. Postal Workers Union*,
   922 F.2d 256 (5th Cir. 1991), *cert. denied*, 502 U.S. 906 (1991)...........................11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standford Junior Univ.*,
   489 U.S. 468 (1989)..............................................................................................11, 20

v

*Watkins Eng'rs & Constructors, Inc. v. Deutz AG*,
   No. CIV.A.3:01CV1147-M, 2001 WL 1545738 (N.D. Tex. Dec. 3, 2001) ............................5

*Western Tech. Servs. Int'l, Inc. v. Caucho Industriales S.A.*,
   Civil Action No.: 3:09-CV-1033-L, 2010 WL 1848949 (N.D. Tex. May 7, 2010) ...............19

*Weyerhaeuser Co. v. Western Seas Shipping Co.*,
   743 F.2d 635 (9th Cir. 1984), *cert. denied,* 469 U.S. 1061 (1984)...........................................7

*Williams v. Cigna Fin. Advisors, Inc.*,
   197 F.3d 752 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000)....................................19, 25

STATE CASES

*Am. Mfrs. Mut. Ins. Co. v. Schaeffer*,
   124 S.W.3d 154 (Tex. 2003)...............................................................................................22

*Babcock & Wilcox Co. v. PMAC, Ltd.*,
   863 S.W.2d 225 (Tex.App.—Houston [14th Dist.] 1993, writ denied)................................20

*Dimotsis v. State Farm Lloyds*,
   5 S.W.3d 808 (Tex. App.—San Antonio 1999, no pet.) (Rickhoff, J., concurring)...............24

*Gamma Group, Inc. v. Transatlantic Reinsurance Co.*,
   242 S.W.3d 203 (Tex.App.—Dallas 2007, no pet.)................................................................22

*Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*,
   180 S.W.3d 635 (Tex.App.—Houston [14th Dist.] 2005, no pet.).........................................22

*Hussong v. Schwan's Sales Enters., Inc.*,
   896 S.W.2d 320 (Tex. App.—Houston [1st Dist.] 1995, no writ)..........................................24

*Lidawi v. Progressive Cty. Mut. Ins. Co.*,
   112 S.W.3d 725 (Tex.App.—Houston [14th Dist.] 2003, no pet.).........................................22

*Reilly v. Rangers Mgmt., Inc.*,
   727 S.W.2d 527 (Tex. 1987)...............................................................................................16

*Tenneco Inc. v. Enter. Prods. Co.*,
   925 S.W.2d 640 (Tex. 1996)...............................................................................................22

*Wilson v. Klein*,
   715 S.W.2d 814 (Tex.App.—Austin 1986, writ ref'd n.r.e.)..................................................23

FEDERAL STATUTES

9 U.S.C. § 4....................................................................................................................................6

9 U.S.C. § 10..................................................................................................................11, 18, 19

9 U.S.C. § 12.........................................................................................................................1, 26

9 U.S.C. § 16............................................................................................................................26

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF CONTRACTS, § 204 ..................................................................16, 17

## I.  <u>Preliminary Statement</u>

Pursuant to the Federal Arbitration Act ("FAA"), Defendant CSA - Credit Solutions of America, LLC[1] ("CSA") respectfully submits this Memorandum of Law In Support of Its Motion To Vacate Arbitrator's Clause Construction Award dated July 7, 2010 (the "Award").[2]

In his Award, the Arbitrator found that the parties have never expressed any agreement whether class arbitration is permitted.  He found not only that the parties' agreement is silent on the matter, but indeed that the parties never even discussed it.  Yet, despite this lack of agreement, the Arbitrator decided to impose class-arbitration procedures on the parties.  In the process, he has bypassed Texas law, Federal law, and recent Supreme Court precedent.

The ensuing Award is invalid—and should be vacated—for three basic reasons.  First, as a threshold matter, the Arbitrator should not have decided the class-arbitration issue in the first place; this Court should have.  Second, regardless of who should have made the decision, the Arbitrator exceeded his powers under the parties' agreement (the "Arbitration Agreement") because he imposed class procedures even though the parties never even discussed them.  Third, the Arbitrator acted in manifest disregard of the applicable law—law that compels the conclusion that the Arbitration Agreement does not permit class arbitration.

Any one of these reasons would justify vacatur on its own, and CSA respectfully asks that the Court vacate the Award.  Should this Court decide not to do so, CSA respectfully asks that this matter and the underlying arbitration be stayed pursuant to 9 U.S.C. § 12 pending further review by the Fifth Circuit Court of Appeals.

---

[1]   The name of the corporate defendant in the caption is no longer correct.

[2]   A true and correct copy of the Award is attached as Exhibit 1.

## A.      Jurisdiction

This Court has previously entertained jurisdiction in this case.  Plaintiff Herman Benson ("Benson") filed this lawsuit on October 1, 2008.[3]  Upon CSA's motion, the Court referred the case to arbitration before the American Arbitration Association ("AAA"), where the Honorable Bruce E. Meyerson was appointed Arbitrator.  Although the Court administratively closed the case, it retained the ability to reopen it upon motion by either party.[4]  The Arbitrator issued his Partial Final Clause Construction Award on July 6, 2010, and stayed the arbitration for at least 30 days as required by Rule 3 of the AAA's Supplementary Rules for Class Arbitrations.[5]  In accordance with this Court's order and the Arbitrator's Award, CSA is filing a contemporaneous motion to reopen this matter for this Court to consider this Motion to Vacate.[6]  Accordingly, this matter is appropriately before this Court for consideration.

## B.      Procedural History

### 1.      Proceedings Before This Court

Benson filed this lawsuit in October 2008.  He asserted claims under the Fair Labor Standards Act ("FLSA") and brought the case as a putative collective action.[7]  CSA filed a Motion to Stay and To Compel Arbitration,[8] and Benson responded by filing a Notice of Non-Opposition.[9]  On November 19, 2008, this Court granted CSA's motion and referred the matter to arbitration.[10]

---

[3]   *See* Complaint, Docket No. 1.

[4]   Order directing administrative closure, Docket No. 15.

[5]   App'x at 13-18.

[6]   Docket No. 18.

[7]   Docket No. 1.

[8]   Docket No. 7.

[9]   Docket No. 15.

[10]  Docket No. 16.

12485454v.6

### 2.      Proceedings Before The AAA

After the Court referred this case to arbitration, the parties proceeded before the AAA.

Benson requested that the Arbitrator issue a clause-construction award ruling that the parties'

Arbitration Agreement allows the case to proceed on a collective- or class-action basis.   The

Arbitration Agreement at issue states:

> In the event of any dispute or claim relating to or arising out of the employment
> relationship or the termination of the employment relationship (including, but not
> limited to, any claims of wrongful termination or age, sex, disability, race or other
> discrimination), you and Credit Solutions™ agree that all such disputes shall be fully,
> finally, and exclusively resolved by binding arbitration conducted by the American
> Arbitration Association's Employment Arbitration Rules and Mediation Procedures
> in Texas and we both waive our rights to have any such disputes tried by a court or
> jury. However, both agree that this arbitration provision shall not apply to any
> disputes or claims relating to, or arising out of, the misuse or misappropriation of
> your or the Company's trade secrets or proprietary information.[11]

In its response, CSA presented the Arbitrator with the Supreme Court's recent decision in *Stolt-

Nielsen S.A. v. AnimalFeeds Int'l Corp.*,[12] explaining the decision's significant impact on the

issues.  After the briefing was closed, the Arbitrator conducted a telephonic hearing.

### 3.      The Arbitrator's Clause Construction Award

The Arbitrator issued the Award on July 6, 2010.   He conceded that "the arbitration

agreement does not make explicit mention of class arbitration,"[13] and is in fact "completely silent

on the question of whether class arbitration is permitted."[14]   He further found that "it is safe to

assume that … the parties did not discuss whether their arbitration agreement would authorize

class arbitration," and that "neither party has offered any parol[] evidence on this point."[15]   Yet

---

[11] App'x at 3.

[12] 130 S.Ct. 1758 (2010).

[13] App'x at 6:1-2.

[14] *Id.* at 8:23-24.

[15] *Id.* at 7:15-19.

despite this frank acknowledgement that no evidence showed that the parties had agreed to class procedures, the Arbitrator concluded that CSA should be required to participate in a class-action arbitration.[16]

The Arbitrator presented three reasons for his conclusion: (1) the phrase "any dispute or claim" contained in the Arbitration Agreement is broad, and thus the Arbitrator could supply "an omitted term regarding collective or class arbitration"; (2) the Agreement's express exclusion of disputes relating to trade-secret and proprietary information implies that all other claims are included—not just substantive claims, but also procedural devices (which the Arbitrator referred to as "collective and class arbitrations"); and (3) because Benson had captioned his lawsuit as a putative collective action, CSA somehow conceded that the arbitration could proceed on a class-action basis when it sought to enforce the Arbitration Agreement.[17]

As explained below, the Arbitrator exceeded his authority not only by deciding this issue in the first place, but also by overstepping his bounds as defined in *Stolt-Nielsen* and by acting in manifest disregard of the law.  Any one of these reasons warrants vacating the award.

### III.  <u>Legal Argument</u>

A.    **The Arbitrator Lacked Jurisdiction To Issue the Award.**

As a threshold matter, *Stolt-Nielsen* creates serious doubt whether the Arbitrator had the power to decide the class-arbitration issue in the first place.[18]   As explained below, the Fifth Circuit historically reserved that power to the courts.  But based on one panel's misapplication of *Green Tree Financial Corporation v. Bazzle*,[19] the Fifth Circuit abandoned that rule and found

---

[16] *Id.* at 11:15-20.

[17] *Id.* at 6-8

[18] App'x at 31-32.  The Arbitrator did not address this issue in his Award.

[19] 539 U.S. 444 (2003).

that arbitrators should decide the class-arbitration issue. Because *Stolt-Nielsen* eviscerates the reasoning used by the Fifth Circuit panel, CSA respectfully submits that the original rule again governs, and that this Court—not the arbitrator—has the power to decide *de novo* whether class arbitration is appropriate.

### 1. Until 2003, the Fifth Circuit Required that Courts—Not Arbitrators— Determine Class-Arbitration Issues.

Before the Supreme Court issued its plurality opinion in *Bazzle*, the rule in the Fifth Circuit was that *courts*—not arbitrators—should determine whether class arbitration was permitted in the face of a silent arbitration agreement. The principal case on this issue was *Del E. Webb Constr. v. Richardson Hosp. Auth.*,[20] in which the Fifth Circuit held that "[t]he question of consolidation … is for the district court because the *court* must determine only whether the contract provides for consolidated arbitration … ."[21]

Notably, the Fifth Circuit was not alone. Other circuits followed the same rule in vesting authority with the court, with the majority of courts then finding that ordering consolidation was inappropriate absent an explicit agreement.[22] In finding that jurisdiction rested with them, courts

---

[20] 823 F.2d 145 (5th Cir. 1987). *See also Watkins Eng'rs & Constructors, Inc. v. Deutz AG*, No. CIV.A.3:01CV1147-M, 2001 WL 1545738, at *4 n.17 (N.D. Tex. Dec. 3, 2001) (citing *Del E. Webb* for the proposition that "issue of whether disputes subject to arbitration should be consolidated in a single arbitration is a question for the district court, looking to the express terms of the agreement among the parties, rather than the arbitrator").

[21] *Id.* at 149-50. While *Del E. Webb* uses the word "consolidation," courts apply the same reasoning in the class-arbitration context. *See, e.g. Herrington v. Union Planters Bank, N.A.*, 113 F. Supp. 2d 1026, 1033-34 (S.D. Miss. 2000) (relying on *Del E. Webb*'s reasoning, granting defendant's motion to dismiss class allegations in arbitration where the agreement was silent on the matter), *affirmed*, 265 F.3d 1059 (5th Cir. 2001); *Gammaro v. Thorp Consumer Disc. Co.*, 828 F. Supp. 673, 674 (D. Minn. 1993) (deciding that the court lacked authority to compel arbitration on a class-wide basis where the arbitration clause did not so provide), *appeal dismissed by* 15 F.3d 93 (8th Cir. 1994); *McCarthy v. Providential Corp.*, No. C 94-0627 FMS, 1994 WL 387852, at *8 (N.D. Cal. Jul. 19, 1994) (same), *cert. denied*, 525 U.S. 921 (1998).

[22] *See, e.g., Connecticut Gen. Life Ins. Co. v. Sun Life Assur. Co. of Can.*, 210 F.3d 771, 773 (7th Cir. 2000) (arbitration consolidation is for a court to decide; "The arbitration provision in the contract does

5

generally relied on the FAA's language that, where the necessary prerequisites are satisfied, "the *court* shall … direct the parties to proceed to arbitration in accordance with the terms of the agreement."[23]   As the Ninth Circuit observed, this interpretation "comports with the [FAA's] underlying premise that arbitration is a creature of contract, and that '[a]n agreement to arbitrate before a special tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'"[24]

### 2.   A Fifth Circuit Panel Misreads *Bazzle* and Concludes That It Overruled Existing Precedent.

Shortly after *Bazzle* was decided, a Fifth Circuit panel decided *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*[25]   In *Pedcor*, the district court certified a class for arbitration, and the defendants appealed.[26]   On appeal, the threshold issue was whether

---

not address the question of who decides, and there are compelling practical objections to remitting the question to the arbitrators.") (citations omitted); *Gov't of United Kingdom v. Boeing Co.*, 998 F.2d 68, 70-71 (2d Cir. 1993) (assuming it is for the court to decide and concluding that "[n]either agreement contains any provision for consolidation … .  We simply have no grounds to conclude that the parties consented to consolidated arbitration. The district court is without authority to consolidate the two actions based upon the mere fact that the disputes contain similar or identical issues of fact and law."); *Am. Centennial Ins. v. Nat'l Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991) ("[W]e align ourselves with the view taken by the Fifth, Eighth, Ninth, and Eleventh Circuits, and hold that a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation"); *Baesler v. Cont'l Grain Co.*, 900 F.2d 1193, 1195 (8th Cir. 1990) (agreeing "with the majority view that the Federal Arbitration Act precludes federal courts from ordering consolidation of arbitration proceedings"); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989) (per curiam) ("[T]he sole question for the district court is whether there is a written agreement among the parties providing for consolidated arbitration" and concluding that parties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them into the agreement).

[23] 9 U.S.C. § 4 (emphasis added).

[24] *Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)), *cert. denied*, 469 U.S. 1061 (1984); *cf. Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 182 (3d Cir. 2010) (*en banc*) ("Enforcing the Agreement 'in accordance with [its] terms' means granting precisely the relief that Chase requested before the District Court—an order compelling the parties to arbitrate their claims on an individual basis").

[25] 343 F.3d 355, 363 (5th Cir. 2003).

[26] *Id.* at 357.

6

the district court had the power to decide whether class procedures were allowed.[27]   In deciding

this issue, the panel turned to *Bazzle*, which had only recently been decided.   After

acknowledging that *Bazzle* yielded only a plurality opinion, the *Pedcor* panel examined Justice

Stevens' concurrence to determine whether he constituted a deciding vote on the issue at hand.

Seizing on Justice Stevens' statement that "arguably the interpretation of the parties' agreement

should have been made in the first instance by the arbitrator, rather than the court," the panel

concluded that Justice Stevens had "express[ed] his agreement … that arbitrators should be the

first ones to interpret the parties' agreement."[28]   Based on this conclusion, the *Pedcor* panel

decided that *Bazzle* controlled the issue before it:

> In sum, … the plurality, plus Justice Stevens, i.e., the Court, held that "this matter of
> contract interpretation should be for the arbitrator, not the courts, to decide."[29]
>
> * * *
>
> [*Bazzle's*] holding that arbitrators, not courts, decide whether an agreement provides
> for class arbitration would appear to overrule *Del E. Webb's* holding to the contrary.[30]

Seven years later, in deciding *Stolt-Nielsen*, the Supreme Court engaged in the very same

analysis, but reached the opposite conclusion.   Contrary to the panel's conclusion in *Pedcor*, the

Supreme Court found that Justice Stevens did *not* "express his agreement" that arbitrators should

decide whether agreements permit class arbitration:

> Justice STEVENS concurred in the judgment vacating and remanding because
> otherwise there would have been "no controlling judgment of the Court," <u>but he did
> not endorse the plurality's rationale.  He did not take a definitive position</u> on the first
> question [i.e., who should decide the class-arbitration issue], stating only that

---

[27] *Id.* at 358.

[28] *Id.* at 358-59

[29] *Id.* at 359.

[30] *Id.* at 363.

12485454v.6

> *"[a]rguably* the interpretation of the parties' agreement should have been made in the first instance by the arbitrator."[31]

The Court went further, concluding that Justice Stevens had "bypassed" the issue altogether:

> But because he did not believe that Green Tree had raised the question of the appropriate decision maker, *he preferred not to reach that question* and, instead, would have affirmed the decision of the State Supreme Court on the ground that "the decision to conduct a class-action arbitration was correct as a matter of law." Accordingly, *his analysis bypassed the first question* noted above and rested instead on his resolution of the second and third questions.[32]

Notably, Justice Stevens himself did not dispute any of this. Based on these conclusions—and contrary to the panel's ruling in *Pedcor*—the Supreme Court ruled that "*Bazzle* did not yield a majority decision on any of the three questions" before it.[33]

Then, just weeks after the *Stolt-Nielsen* decision, the Supreme Court issued the *Granite Rock* decision where it put to rest any dispute about who is the appropriate decision-maker.[34] The Supreme Court said that if either party disputes the applicability of the clause to a particular dispute, the court — not the arbitrator — is the appropriate decision-maker.[35] The Court stated:

> [C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, "the court" must resolve the disagreement.[36]

The panel in *Pedcor* misapplied *Bazzle* because it mistook Justice Stevens' concurrence for a fifth vote. Then, based on that error, it wrongly concluded that *Bazzle* "appear[ed] to overrule" existing Fifth Circuit precedent. But as *Stolt-Nielsen* expressly found, Justice Stevens did not agree with the plurality and *Bazzle* did not yield a majority opinion on any of the issues

---

[31] *Stolt-Nielsen* at 1772 (italics in original; underscore added; internal citations omitted).

[32] *Id.* (emphasis added; internal citation omitted).

[33] *Stolt-Nielsen* at 1772.

[34] *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2857-2858 (2010).

[35] *Id.*

[36] *Id* (emphasis supplied).

before it.   Thus, contrary to what *Pedcor* may say, *Bazzle* did not overrule anything.   The *Granite Rock* decision makes it clear that the court — not the arbitrator — is the appropriate decision-maker.

### 3. Pursuant to the Rule of Orderliness, the Original Rule Governs and this Court Must Determine Whether Class Arbitration Is Permitted.

Because *Bazzle* did not change the law, *Pedcor* is without effect.   Not only has the Supreme Court abrogated *Pedcor's* reasoning, but the Fifth Circuit's "rule of orderliness" nullifies its precedential value.   Under the rule of orderliness, one panel may not overturn a prior panel's decision unless there is an intervening change in the law—that is, a statutory amendment, a Supreme Court decision, or an *en banc* decision by the full Fifth Circuit.[37]   When a subsequent panel purports to overrule a prior panel in the absence of such a change, the prior panel's decision governs.[38]

As *Stolt-Nielsen* confirms, no intervening changes have occurred here.   Because *Bazzle* did not change the law, the rule of orderliness prevents *Pedcor* from overruling *Del E. Webb*. Consequently, *Del E. Webb* controls, and this Court, not the Arbitrator, should have decided whether to impose class arbitration in this case.   Moreover—rule of orderliness aside—*Stolt-Nielsen* nullifies *Pedcor* by making clear that it applied *Bazzle* erroneously.   Either way, this Court is the correct arbiter of whether the Arbitration Agreement permits class arbitration despite its silence on the matter.   And as the analysis below explains, class arbitration is inappropriate in these circumstances.

---

[37] *See*, *e.g.*, *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (en banc) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision ….."); *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999) ("[T]he rule of orderliness forbids one of our panels from overruling a prior panel.").

[38] *See*, *e.g.*, *Teague*, 179 F.3d at 383 (holding that, to the extent a subsequent panel decision contradicted previous decisions, it was "of no effect").

**B.      The Arbitrator Exceeded His Powers By Ordering Class Arbitration In The Face Of A Silent Agreement.**

Regardless of whether he had authority to decide the issue at hand, the Arbitrator exceeded his authority as defined by the FAA and the Supreme Court in *Stolt-Nielsen*.  For the reasons provided below, this Court should vacate the Award, conduct a *de novo* review, and find that the Arbitration Agreement does not permit class arbitration.

### 1.      Vacatur Is Appropriate Where, as Here, an Arbitrator Exceeds His Powers.

It is a foundational principle of the FAA that "arbitration is a matter of consent."[39] Consistent with that central principle, arbitrators must "rigorously enforce" arbitration agreements as written—and in doing so, must give "effect to the contractual rights and expectations of the parties."[40]   Accordingly, an arbitrator's powers are "dependent on the provisions under which the arbitrators were appointed."[41]   In that regard, "the scope of the contractual clause cannot be extended beyond the intention of the parties."[42]  When an arbitrator exceeds these well defined powers, he or she runs afoul of the FAA, and the ensuing award may be vacated[43]:  "Where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference ends and vacatur or modification of the award is an appropriate remedy."[44]

---

[39] *Stolt-Nielsen*, 130 S.Ct. at 1775.

[40] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standford Junior Univ.*, 489 U.S. 468, 479 (1989) (*quoting Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

[41] *Apache Bohai Corp., LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) (citation omitted).

[42] *Hand v. Chiropractic USA*, Cause No. 2:07-CV-014-J, 2007 WL 1149915, at *1 (N.D. Tex. Apr. 13, 2007) (citing *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1982)).

[43] 9 U.S.C. § 10(a)(4); *see also Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002); *U.S. Postal Serv. v. Am. Postal Workers Union*, 922 F.2d 256, 258 (5th Cir. 1991) (when an arbitrator exceeds his authority, vacatur is appropriate), *cert. denied*, 502 U.S. 906 (1991).

[44] *Bruce Hardwood Floors v. UBC, So. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir. 1997) (citing *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989), *cert. denied,* 498 U.S. 853 (1990)), *cert. denied*, 522 U.S. 928 (1997).

Notably, the Arbitrator is not permitted to reconsider the Award because the *functus officio* doctrine prevents him from doing so. The *functus officio* doctrine "is designed to prevent an arbitrator from revisiting an award; it protects the finality of an arbitrator's decision."[45] Under this doctrine, an arbitrator can revisit a final award only for very limited purposes not relevant here.[46] Consequently, should this Court find that the Arbitrator exceeded his powers or acted in manifest disregard of the law, it should vacate the Award without providing the Arbitrator an opportunity to reconsider it.

**2.    An Arbitrator Exceeds His Powers When He Goes Beyond His Contractual Mandate.**

To determine whether the Arbitrator has exceeded his powers, the Court must examine the language in the arbitration agreement.[47] When an arbitration agreement vests an arbitrator with the authority to interpret a contract, his construction will be enforced so long as it is "rationally inferable from the letter or purpose of the underlying agreement."[48] An award is rationally inferable from the underlying contract only if it "in some logical way, [is] derived from the wording or purpose of the contract."[49] But while "[j]udicial review of an arbitration award is exceedingly deferential," the courts are not powerless to vacate awards that exceed the FAA's authority. When an arbitrator "strays from interpretation and application of the

---

[45] *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1220 n.4 (5th Cir. 1990), *cert. denied*, 501 U.S. 1206 (1991).

[46] *Brown v. Witco Corp.*, 340 F.3d 209, 219 (5th Cir. 2003) (arbitrator may reconsider an award: (1) to correct a facially apparent mistake; (2) to decide an issue submitted but not completely adjudicated; or (3) to clarify or construe an award that seems complete but proves to be ambiguous).

[47] *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003), *rehearing and rehearing en banc denied*, 77 Fed.Appx. 289 (5th Cir. 2003).

[48] *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007) (citation omitted).

[49] *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990) (internal quotation marks omitted).

11

agreement and effectively dispense[s] his own brand of industrial justice," a court may find the ensuing award unenforceable, and vacate it accordingly.[50]  That is what the Supreme Court did in *Stolt-Nielsen*, and it is what this Court should do here.

> **3.** **Under *Stolt-Nielsen*, Mere Silence Does Not Constitute Consent to Class Arbitration—to the Contrary, Silence Provides "Reason To Doubt" that any Such Consent Exists.**

Where, as here, the parties neither expressed nor even discussed whether class arbitration would be permitted, an arbitrator cannot force them to use such procedures.  The Supreme Court addressed this very question in *Stolt-Nielsen* and held that class arbitration is far too different from bilateral arbitration to permit any inference that a silent agreement by itself constitutes consent:

> An implicit agreement to authorize class-action arbitration … is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.  This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.[51]

In announcing this rule, the Court recognized that parties agree to arbitrate (and to relinquish judicial protections) because they seek to *contain* their disputes, not inflame them:

> In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.[52]

Notably, the AAA itself made a similar observation in its *Stolt-Nielsen* amicus brief, explaining that arbitration clauses have become popular because businesses have sought to "avoid[] costly

---

[50] *Am. Laser Vision*, 487 F.3d at 258-59.

[51] *Stolt-Nielsen*, 130 S.Ct. at 1775.

[52] *Id.*

and time-consuming litigation in the court system, and resolv[e] disputes in an efficient and streamlined process."[53]

But the Court did not end its analysis there.  It provided specific examples of what it called the "fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration."[54]  It began with the most obvious difference—that is, the sheer number of disputes that a class arbitration would involve:

> An arbitrator chosen according to an agreed-upon procedure … no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties.[55]

The Court next recognized that, unlike bilateral arbitrations, class arbitrations do not enjoy any presumption of privacy and confidentiality:

> Under the [AAA's] Class Rules, "the presumption of privacy and confidentiality" that applies in many bilateral arbitrations "shall not apply in class arbitrations," … thus potentially frustrating the parties' assumptions when they agreed to arbitrate.[56]

After making these and other observations, the Court addressed what may be the most critical factor of all—the increased exposure class arbitration creates, combined with decreased judicial protections:

> And the commercial stakes of class-action arbitration are comparable to those of class-action litigation … even though the scope of judicial review is much more limited … .[57]

With this last observation, the Court went to the heart of why businesses agree to arbitrate in the first place:  they seek to control their exposure.  No rational business would ever consent to *compounding* its exposure—perhaps hundreds or thousands of times over—while

---

[53] App'x at 88.

[54] *Stolt-Nielsen*, 130 S.Ct. at 1776.

[55] *Id.*

[56] *Id.* (quoting AAA Supplementary Rules for Class Arbitrations Rule 9(a)).

[57] *Id.*

simultaneously forgoing the appellate-review process that traditional lawsuits provide.  To do so would be to potentially place the company's entire future in the hands of a single arbitrator.  To presume without an express agreement that a business would make such a baffling decision would stretch reason beyond the breaking point.  And that is what the Supreme Court said in *Stolt-Nielsen*.

Citing the FAA's "basic precept" that arbitration is a matter of consent and not coercion, the Court recognized that courts and arbitrators must "give effect to the contractual rights and expectations of the parties."[58]  These expected benefits include "lower costs, greater efficiency and speed," confidentiality,[59] and "economics."[60]  Given the monumental differences between bilateral and class arbitrations, the Court found reason to *doubt* that parties would agree to class proceedings without saying so in their agreement:

> [T]he relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' consent to resolve disputes through class-wide arbitration.
>
> * * *
>
> We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.[61]

Notably, this reasoning is consistent with the Texas courts' real-world view that contracts are to be construed from a utilitarian standpoint, bearing in mind the particular business activity sought to be served.[62]

---

[58] *Stolt-Nielsen* at 1773, 1774 (internal quotations omitted).

[59] *Id.* at 1775-76 (citing cases).

[60] *Id.* at 1775 (citing cases).

[61] *Id.* at 1775-76.

[62] *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

14

Based on these principles, the Supreme Court concluded that arbitrators in *Stolt-Nielsen* exceeded their authority under the FAA by inferring consent in the face of mere silence.[63]  As explained below, the Arbitrator here made the same basic error.  Accordingly, the Court should vacate the award, conduct a *de novo* review, and find that CSA did not make a silent—though highly significant—decision to permit class arbitrations, thereby opening the door to potentially crushing liability while forfeiting most of its appellate rights.

**C.     The Arbitrator Exceeded His Powers by Finding Consent Even Though He Conceded that the Agreement Is Silent and the Parties Never Discussed Class Arbitration.**

The Arbitrator made three key findings:

- He conceded that the Agreement "does not make explicit mention of class arbitration."[64]

- He concluded that it was "safe to assume" that "the parties did not discuss whether their arbitration agreement would authorize class arbitration."[65]

- He found that he could rely on Restatement (Second) of Contracts, § 204 (1981) because that section "sets forth the rule to be applied *where parties have not agreed to a term* 'essential to a determination of their rights and duties.'"[66]

Once the Arbitrator found that the parties neither expressed nor discussed any agreement to use class procedures, his analysis should have stopped.  As the Supreme Court plainly held in *Stolt-Nielsen*, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."[67]  But the Arbitrator's analysis did not stop.  Instead, the Arbitrator engaged in further reasoning that, if accepted,

---

[63] *Stolt-Nielsen*, 130 S.Ct. at 1758.

[64] App'x at 6:1-2.

[65] *Id.* at 7:15-18.

[66] *Id.* at 7:20-24 (emphasis added).

[67] *Stolt-Nielsen*, 130 S.Ct. at 1775 (emphasis in original).

would swallow *Stolt-Nielsen* completely.  Specifically, he found that Texas law—having adopted Restatement (Second) of Contracts § 204—allowed him to supply an additional provision that he deemed essential to a determination of the parties' rights and duties.

The Arbitrator's rationale suffers from two fatal flaws.  First, if such reasoning allows an arbitrator to insert class-arbitration terms into an otherwise silent agreement, then *Stolt-Nielsen* is meaningless.  That is, if class-arbitration provisions are "essential" terms to silent arbitration agreements—and must therefore be read into such agreements—it would result in a default rule that class arbitration is permitted unless it is specifically prohibited.  Yet that is precisely the kind of default rule that *Stolt-Nielsen* repudiates.  Second, by its own terms, Restatement § 204 applies only where the parties "have not agreed" to the term at issue.[68]  But if the parties have not agreed, then there can be no consent—and without consent, class arbitration cannot occur.

The Supreme Court could not have been clearer:  An arbitrator exceeds his powers where, as here, he requires a party to submit to class arbitration when that party has not agreed to do so.  The Arbitrator cannot bypass *Stolt-Nielsen* simply by asserting that class arbitration is an essential, but absent term.  Because the Arbitrator did that very thing here, he exceeded his limited authority under the FAA.  Accordingly, his Award must be vacated.

**D.   The Arbitrator Manifestly Disregarded Governing Law by Requiring Class Arbitration.**

This Court does not need to find that the Arbitrator acted in manifest disregard of the law in order to vacate the Award, as he has exceeded his powers under the FAA.  However, because he did disregard the law, the Court has an additional basis to vacate the award.  Moreover, CSA respectfully suggests that an analysis of the Arbitrator's legal errors will assist the Court in

---

[68] RESTATEMENT (SECOND) OF CONTRACTS, § 204; Exhibit 1 at 4.

16

conducting a *de novo* review of the Arbitration Agreement by explaining why relevant Texas law requires the conclusion that class arbitration is not permitted.

### 1.    Manifest Disregard Survives as a Basis for Vacatur.

Before *Stolt-Nielsen*, the Fifth Circuit had assumed that manifest disregard of the law no longer provided grounds for vacatur, citing the Supreme Court's decision in *Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).[69]   However, a number of other appellate courts have found that the manifest-disregard standard survives as a "judicial gloss" on the statutory bases for vacatur.[70]   In *Stolt-Nielsen*, the Supreme Court assumed for the sake of argument that manifest disregard *did* survive—either as an independent ground for vacatur or as a judicial gloss—and found that requiring class arbitration in the face of silence constituted manifest disregard of the law.[71]   At least one decision in this District has recognized that the question remains open.[72]

---

[69] *See Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009) (finding that "to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA.").

[70] *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir.) (concluding that "after *Hall Street Associates*, manifest disregard of the law remains a valid ground for vacatur" because it is "shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)"), *cert. denied*, 130 S.Ct. 145 (2009); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008) (holding that " 'manifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards"), *rev'd on other grounds*, 130 S.Ct. 1758 (2010); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed.App'x. 415, 418-19 (6th Cir. 2008) (while *Hall Street* "significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, ... it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law" because it held only that the FAA prohibits private parties from supplementing by contract the FAA's statutory grounds for vacatur, without expressly addressing whether those grounds may be supplemented judicially), *cert. denied*, 130 S.Ct. 81 (2009).

[71] *Stolt-Nielsen*, 130 S.Ct. at 1768 n.3 ("We do not decide whether manifest disregard survives our decision in *Hall Street Associates, L.L.C.* as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10. … Assuming, *arguendo*, that such a standard applies, we find it satisfied for the reasons that follows.") (emphasis supplied).

[72] *Western Tech. Servs. Int'l, Inc. v. Caucho Industriales S.A.*, Civil Action No.: 3:09-CV-1033-L, 2010 WL 1848949, at *2 (N.D. Tex. May 7, 2010) ("[T]here is some basis for an argument that manifest

2.       **The Arbitrator Acted in Manifest Disregard of the Law.**

Assuming that manifest disregard provides another basis for vacatur, that standard is satisfied here.  The Fifth Circuit will find manifest disregard when: (1) it is manifest that the arbitrator acted contrary to the applicable law; and (2) the award would result in a significant injustice, taking into account all of the circumstances of the case, including the power of the arbitrator to judge norms appropriate to the relations between the parties.[73]

As the Supreme Court explained in *Stolt-Nielsen*, "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'"[74]  For the reasons already provided above, the Arbitrator manifestly disregarded these fundamental rules.  As explained below, he also disregarded Texas contract law.

a.       **The Arbitrator's Analysis of the "Any Dispute" Language Was Contrary to the Applicable Law.**

The Arbitrator presented three reasons for his conclusion that class arbitration was required.  First, he found that the phrase "any dispute or claim" is broad language that permits him to supply an "omitted" term imposing class procedures.[75]  But the Texas cases to which he refers do not support his broad interpretation.  The presumption of arbitrability is not without limits and cannot serve to stretch a contractual clause beyond the scope intended by the parties.  Nor does it authorize an arbitrator to disregard or modify the plain and unambiguous provisions

---

disregard could be considered under one of the statutory grounds for vacatur"; observing that the Supreme Court's opinion in *Stolt-Nielsen* "left the precise issue in this case unresolved").

[73] *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 762 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000).

[74] *Stolt-Nielsen*, at 1773 (internal citations omitted; quoting *Volt Info. Sci., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)).

[75] App'x at 9:9-18.

of the agreement.[76]   In fact, the only case the Arbitrator cites stands for the uncontroversial proposition that "any dispute" is a broad phrase.[77]   CSA does not deny that the phrase is broad; it is plainly intended to encompass a broad range of *substantive* claims.   But as the Supreme Court has recognized, the ability to proceed as a class action is not a remedy or substantive right, but is merely a procedural device.[78]   Consequently, a class action is not a dispute or claim identified in the Arbitration Agreement.

Cases that are directly on point highlight that the Arbitrator's interpretation is improper.[79] Further, if the phrase "any disputes" is sufficient to reflect a clear intent of the parties to authorize class arbitration, one must question why the arbitration agreements at issue in *Stolt-Nielsen*—one of which applied to "[a]ny dispute arising from the making, performance or termination of this Charter Party," and the other of which identified its scope as "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter"—would not have been

---

[76] *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

[77] App'x at 9:10-15.

[78] *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1439 n.4 (2010) ("Whether or not those laws conflict with Rule 23, § 901(b) does conflict because it addresses not the remedy, but the procedural right to maintain a class action."); *cf. Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 923 (N.D. Tex. 2000) ("Substantive remedies cannot be created by the availability of a class action."); *Gray v. Conseco, Inc.*, No. SA CV 00-322 DOC (EEX), 2000 WL 1480273, at *7 (C.D. Cal. Sept. 29, 2000) ("Plaintiffs assert that 'unless [the present arbitration clause] allows for a class action of plaintiffs' claims, plaintiffs are being barred from pursuing a powerful remedy … .' However, … *the class action device is a procedure, not a remedy or a substantive right.* Plaintiffs' agreement to arbitrate in no way limits the relief to which they may be entitled.") (emphasis added), *clarification denied*, No. SA CV 00-322 DOC (EEX), 2001 WL 1081347 (C.D.Cal. Sept. 6, 2001).

[79] *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1122, 1126-27 (D. Kan. 2003) (arbitration clause that covered "any claim, controversy or dispute between you and Sprint" was silent on class-wide arbitration); *Scout.com, LLC v. Bucknuts, LLC*, No. C07-1444 RSM, 2007 WL 4143229, at *2, *4 (W.D. Wash. Nov. 16, 2007) (finding that arbitration clause that covered "[a]ny dispute or claim arising out of or in connection with this Agreement" was silent on class arbitration), *order clarified*, No. C07-1444 RSM, 2007 WL 4510294 (W.D. Wash Dec. 18, 2007).

19

subject to the same finding.[80]  Indeed, the District Court for the Southern District of New York recently issued an opinion that followed this very reasoning.  In what is believed to be the first opinion applying *Stolt-Nielsen* in the employment-law context, District Judge Jed Rakoff recently rejected the assertion that "any disputes" should be construed to include an implicit acceptance of class arbitration.[81]  The same conclusion is warranted here.

> **b.    The Arbitrator Acted Contrary to Texas Law by Inserting an Additional Provision into the Agreement Even Though the Parties Did Not So Clearly Contemplate it that They Deemed it Unnecessary To Express It.**

In truth, the Arbitrator did not actually "interpret" the meaning of the phrase "any dispute."  Rather, he inserted a brand-new provision.  Texas courts have repeatedly cautioned against this very thing: "Courts do not rewrite contracts to insert provisions parties could have included or imply restraints for which they did not bargain.  *A court may not add to a contract under the guise of interpretation.*"[82]  While Texas courts "will supply missing terms when necessary to effectuate the purposes of the parties under the agreement,"[83] they will do so only under very rare circumstances:

---

[80] *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 435 F. Supp. 2d 382, 384 n.1 (S.D.N.Y. 2006).

[81] *Jock v. Sterling Jewelers Inc.*, Case No. 08-CV-2875 (S.D.N.Y. Jul. 26, 2010), attached at 108, at 116-18.

[82] *Gamma Group, Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203, 212 (Tex.App.—Dallas 2007, no pet.) (emphasis added) (internal citations omitted); *Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 641 (Tex.App.—Houston [14th Dist.] 2005, no pet.) ("To ascertain the true intentions of the parties to the contract, we examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless.  We cannot rewrite the Drilling Contract or add to its language under the guise of interpretation.  Rather, we must enforce the Drilling Contract as written") (internal citations omitted); *cf. Am. Mfrs. Mut. Ins. Co. v. Schaeffer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language"); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained.").

[83] App'x at 8:1-2 (quoting *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 731-32 (Tex.App.—Houston [14th Dist.] 2003, no pet.)).

20

> In order for a court to read additional provisions into the contract, the implication must clearly arise from the language used, or be indispensable to effectuate the intent of the parties.  It must appear that the implication was *so clearly contemplated by the parties that they deemed it unnecessary to express it*.[84]

Here, there is no reason—and not even a finding—that the parties so clearly contemplated class arbitration that they deemed it unnecessary to express it.  To the contrary, the Arbitrator admitted that it was "safe to assume" that the parties never even discussed the matter.[85]  Under these facts—and as the Supreme Court found in *Stolt-Nielsen*—there is "reason to doubt" that the parties would consent to use class procedures without saying so in their agreement.  The Arbitrator disregarded these concepts and, despite his finding that the parties never even considered class arbitration, imposed a nonexistent term anyway.  In so doing, he acted contrary to Texas law and *Stolt-Nielsen*.

### c.    The Arbitrator's Reliance On *Expressio Unius Est Exclusion Alterius* Is Contrary to Texas Law.

The Arbitrator also invoked the inapplicable doctrine *expressio unius est exclusion alterius* ("EUEEA," Latin for "the expression of one thing is the exclusion of another").  Specifically, he observed that the Arbitration Agreement excludes one category of substantive claims—i.e., disputes relating to trade secrets and proprietary information—and found that "all other categories of disputes" are intended to be included.[86]  This rationale again presumes, incorrectly, that "disputes" includes not only the substantive claims enumerated in the Agreement, but also class procedures.  As explained above, that reasoning is contrary to Texas law.  Because this rationale rests on a flawed premise, it is likewise fatally flawed.

---

[84] *Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 658 (5th Cir. 1989) (quoting with approval *Kutka v. Temporaries, Inc.*, 568 F. Supp. 1527, 1535 (S.D. Tex. 1983)) (emphasis added).

[85] App'x at 7:15-18.

[86] *Id.* at 9:19-10:3.

Further, the Arbitrator fundamentally misapprehends the EUEEA doctrine.  The doctrine is not meant to enlarge a class of things described in a contract—here, any and all "disputes"—but rather to place limits around that class:

> [The EUEEA doctrine] ordinarily contemplates that the mention of one or more things in a class *narrows the scope of the class* to the specifically named thing or things, by excluding the remaining things in the class which would otherwise have been included therein. … [T]he purpose and theory of the maxim … is ordinarily to control, limit, or restrain the otherwise implied effect of an instrument, and *not to annex incidents to written contracts in matters with respect to which they are silent*.[87]

Indeed, the doctrine is not to be used where, as here, the agreement is unambiguous[88]—and thus the Arbitrator had no reason to invoke it in the first place.

More critically, however, the Arbitrator's reasoning is fundamentally at odds with *Stolt-Nielsen* because it suggests that CSA would have to explicitly *prohibit* class arbitration to avoid class arbitration—and that its failure to do so creates consent by implication.  As Judge Rakoff recently recognized in *Jock*, *supra*, such a suggestion "is directly contrary to *Stolt-Nielsen*'s rejection of the notion that 'parties' mere silence on the issue … constitutes consent to resolve their disputes in class proceedings.'"[89]  Thus, once again, the Arbitrator's reasoning flies in the face of the governing law.

---

[87] *Wilson v. Klein*, 715 S.W.2d 814, 819 n.2, 820 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (emphasis added).

[88] *Dvorken Family Ltd P'ship v. Martin Marietta Materials, Inc.*, No. SA-03-CA-0031 FB, 2004 WL 377537, *7 (W.D. Tex. Jan. 6, 2004) (refusing to apply EUEEA and other interpretive doctrines where agreement was unambiguous); *see also Dimotsis v. State Farm Lloyds*, 5 S.W.3d 808, 811-12 (Tex. App.—San Antonio 1999, no pet.) (Rickhoff, J., concurring) ("We do not resort to the *ejusdem generis* doctrine unless we have already determined that a term is ambiguous."); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("The doctrine of *ejusdem generis* applies only when the contract is ambiguous.") (emphasis supplied).

[89] App'x at 117 (quoting *Stolt-Nielsen*, 130 S.Ct. at 1776).

**d.     The Arbitrator Had No Legal Basis To Suggest that CSA Endorsed Class Arbitration by Compelling Arbitration.**

Finally, the Arbitrator props up his Award by concluding that CSA consented to class-arbitration procedures by compelling arbitration.  He reasoned that CSA's decision "strongly suggests" that the Company believed a collective action could be brought in an arbitration under the Arbitration Agreement.[90]  What, exactly, was CSA supposed to do to vindicate its right to arbitrate Benson's disputes under their agreement?   Under the Arbitrator's reasoning, since Benson styled his lawsuit as a collective action, CSA's choices were reduced to submitting to class arbitration to which it never agreed, or foregoing arbitration entirely.  In other words, under the Arbitrator's theory, Benson had the unilateral right to require class arbitration if there was going to be an arbitration.  Such logic contravenes *Stole-Nielsen* and cannot be correct.  A defendant's effort to compel arbitration cannot, in and of itself, evidence an intent to submit to class arbitration.

**e.     For the Reasons Identified in *Stolt-Nielsen*, the Award Results in a Significant Injustice to CSA.**

Each of the Arbitrator's reasons for his Award are contrary to applicable law.  The only other question this Court must address is whether the Award would result in a significant injustice, taking into account all of the circumstances of the case, including the power of the arbitrator to judge norms appropriate to the relations between the parties.[91]

Requiring CSA to participate in a class arbitration without its consent will result in a significant injustice to CSA.  CSA negotiated for the benefits of bilateral arbitration that were described in *Stolt-Nielsen*:  lower costs, greater efficiency and speed, the ability to choose expert

---

[90] App'x at 11:4-14.

[91] *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 762 (5th Cir. 1999).

adjudicators to resolve specialized disputes, confidentiality, a single claimant, and general control over its exposure.[92]  At the same time, CSA agreed to forfeit "the procedural rigor and appellate review of the courts."[93]  CSA did not consent to participate in a class arbitration, which provides none of the described benefits and foregoes appellate review.  By improperly depriving CSA of every benefit of its bargain—and making this case infinitely more complex and expensive while increasing CSA's exposure by several orders of magnitude—the Arbitrator has wrought an injustice that is not merely significant, but extraordinarily so.

**E.     If this Court Denies Vacatur, It Should Stay the Arbitration Pursuant to 9 U.S.C. § 12 Pending Appeal of this Order Under 9 U.S.C. § 16.**

Should the Court deny this motion, CSA respectfully asks the Court to stay the arbitration proceedings under 9 U.S.C. § 12 to allow CSA to appeal this Court's ruling under 9 U.S.C. § 16(a)(1)(D), which provides that an appeal may be taken from an order confirming a partial award.

## IV.  Conclusion

For all of the foregoing reasons, the Court should vacate the Award and find that CSA did not consent to class procedures.  Should the Court deny this motions, CSA asks that the Court stay the arbitration proceedings pending an appeal of this matter to the Fifth Circuit Court of Appeals.

Dated: August 5, 2010

---

[92] *Stolt-Nielsen*, 130 S.Ct. at 1775-76.
[93] *Id.* at 1775.

Respectfully submitted,


SEYFARTH SHAW LLP

By:  s/ John L. Collins
     John L. Collins
     SEYFARTH SHAW LLP
     State Bar No. 00796025
     700 Louisiana Street, Suite 3700
     Houston, Texas  77002
     (713) 225-2300 – Telephone
     (713) 225-2340 – Facsimile
     jcollins@seyfarth.com


OF COUNSEL:

SEYFARTH SHAW LLP
Robert J. Carty, Jr.
State Bar No. 00788794
Kate L. Birenbaum
State Bar No. 00787087
Clayton D. Craighead
State Bar No. 24065092
700 Louisiana Street, Suite 3700
Houston, Texas  77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile
rcarty@seyfarth.com
kbirenbaum@seyfarth.com
ccraighead@seyfarth.com


John Greco
State Bar No. 24050686
Assistant General Counsel
CSA - Credit Solutions of America, LLC
12700 Park Central Dr., 21st Floor
Dallas, Texas 75251
(972) 763 - 7135 - Telephone
(214) 678-7151 - Facsimile
jgreco@creditsolutions.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 5, 2010, true and correct copies of the foregoing pleading were served on all counsel of record, as listed below, via ECF filing and/or United States mail.

J. Derek Braziel, Esq.
Meredith Mathews, Esq.
Lee & Braziel, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas  75202

Robert J. Camp
The Cochran Law Firm, PC
505 20th Street North, Suite 825
Birmingham, Alabama 35203

s/ John L. Collins
John L. Collins

26