**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HERMAN BENSON, JR., Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 3:08-CV-01735-G |
| CSA – CREDIT SOLUTIONS OF AMERICA, INC., | § § § | |
| Defendant. | | |

**DEFENDANT'S REPLY BRIEF  IN SUPPORT OF ITS
MOTION TO VACATE ARBITRATOR'S CLAUSE CONSTRUCTION
AWARD OR STAY THE PROCEEDINGS PURSUANT TO 9 U.S.C. §§ 10, 12**

John L. Collins
SEYFARTH SHAW LLP
State Bar No. 00796025
700 Louisiana Street, Suite 3700
Houston, Texas  77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile
jcollins@seyfarth.com

*Attorney-in-Charge for Defendant*

12712925v.3

## **TABLE OF CONTENTS**

A. This Court, Not the Arbitrator, Must Decide Whether CSA Consented to Class Arbitration. ..................................................................................................1

B. The Arbitrator Exceeded His Authority By Imposing Class Arbitration Without any Legitimate Contractual Basis for Doing So. ......................................4

    1. Benson Fails To Identify any Material Differences Between This Case and *Stolt-Nielsen*. ................................................................................5

    2. The Arbitrator's Reasons for Imposing Class Arbitration Lack any Factual or Legal Support and Violate *Stolt-Nielsen*. ..................................6

C. If the Court Does Not Vacate the Award, It Should Stay the Arbitration So That CSA May Appeal the Issue to the Fifth Circuit. ............................................9

D. Conclusion ................................................................................................................10

12712925v.3

**Table of Authorities**

**Page(s)**

**FEDERAL CASES**

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................. 2, 4

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
    130 S.Ct. 2847 (2010) ............................................................................................ 3, 4, 7

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) ................................................................................................. 2, 4

*Jock v. Sterling Jewelers Inc.*,
    Case No. 08-CV-2875 (S.D.N.Y. Jul. 26, 2010) ........................................................... 8

*New England Energy Inc. v. Keystone Shipping Co.*,
    855 F.2d 1 (1st Cir. 1988) ............................................................................................. 4

*Pacheco v. Rice*,
    966 F.2d 904 (5th Cir. 1992) ....................................................................................... 10

*Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*,
    343 F.3d 355 (5th Cir. 2003). ........................................................................................ 2

*Sims v. Housing. Auth. of El Paso*,
    No. EP-10-CV-109-KC, 2010 WL 3221790 (W.D. Tex. Aug. 13, 2010) ................... 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S.Ct. 1758 (2010) ........................................................................... 1, 2, 3, 4, 5, 6, 7, 8

*Volt Information Sciences, Inc. v. Board of Trustees.*,
    489 U.S. 468 (1989) ...................................................................................................... 8

*Willins v. Credit Solutions of America, Inc.*,
    Case No. 3:09-cv-01025-M ......................................................................................... 10

**FEDERAL STATUTES**

9 U.S.C. § 12 ....................................................................................................................... 9

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 204 ........................................................................... 6

iii

12712925v.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| HERMAN BENSON, JR., Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 3:08-CV-01735-G |
| CSA – CREDIT SOLUTIONS OF AMERICA, INC., | § § § § | |
| Defendant. | § | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO VACATE ARBITRATOR'S CLAUSE CONSTRUCTION
AWARD OR STAY THE PROCEEDINGS PURSUANT TO 9 U.S.C. §§ 10, 12**

The main theme of Benson's Response is that *Stolt-Nielsen*[1] has no bearing on this case. Benson spends most of his time arguing, incorrectly, that the Supreme Court's decision is subject to legal principles that simply do not apply here. At the same time, he barely responds to CSA's overriding argument that the Arbitrator should never have decided the class-arbitration issue in the first place. And when he does respond, he ultimately concedes that class arbitration is a "question of arbitrability"—that is, a question the courts must decide. In the end, Benson fails to justify the Arbitrator's capricious findings and improvident reliance on legal doctrines that are inapposite to this case. Because the Arbitrator exceeded his authority, his clause-construction award (the "Award") must be vacated.

**A.    This Court, Not the Arbitrator, Must Decide Whether CSA Consented to Class Arbitration.**

Benson spends remarkably little time responding to CSA's most basic point—i.e., that the Arbitrator lacked jurisdiction to decide whether the parties agreed to class arbitration. As

---

[1] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010).

12712925v.3

CSA showed, the original rule was that *courts*, not arbitrators, must decide that issue.[2] This rule was consistent with the historical view that arbitrators should not determine the extent of their own powers.[3] The Fifth Circuit purported to change this rule in the *Pedcor* case[4]—but did so based on the mistaken belief that the Supreme Court had changed the law in *Bazzle*.[5] Because it is now clear, in light of *Stolt-Nielsen*, that the law never in fact changed, *Pedcor* is without effect under the Fifth Circuit's well established rule of orderliness. The original rule thus prevails.[6]

Benson ignores this reasoning altogether. He opens his argument with a straw man, denying that *Stolt-Nielsen* definitively held that the courts are the proper decision-makers. In so doing, he attacks an argument CSA never made.[7] As stated, CSA's actual argument is that *Stolt-Nielsen* confirmed that *Bazzle* is not controlling[8]—a conclusion that renders *Pedcor* ineffectual and restores the Fifth Circuit's original jurisprudence. Benson never responds to *that* argument.

Benson surmises instead that, had the Court in *Stolt-Nielsen* believed that courts are the proper decision-makers, it "would have reviewed the issue *de novo*."[9] But that is precisely what the Court did. Even the dissent recognizes this in its opening paragraph: "The Court prematurely takes up that important question and, indulging in *de novo* review, overturns the ruling of experienced arbitrators."[10] Given the Court's *de novo* review, one could certainly conclude

---

[2] *See* CSA's brief at 5-6.
[3] *See AT&T Technologies, Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 651 (1986) ("The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be drastically reduced … if a labor arbitrator had the power to determine his own jurisdiction.") (internal quotations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (explaining why courts hesitate to allow arbitrators decide the scope of their own powers).
[4] *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355 (5th Cir. 2003).
[5] *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003).
[6] *See* CSA's brief at 6-9.
[7] Benson also ignores the fact that the Supreme Court did not have to reach that issue because—unlike this case—the parties had expressly agreed to submit the class-arbitration question to the arbitration panel. But even then, the Court went on to decide the issue itself. *See Stolt-Nielsen* at 1765.
[8] *Stolt-Nielsen* at 1772 (observing that the "baffled" parties—like the panel in *Pedcor*—"appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration" and finding that "*Bazzle* did not yield a majority decision on any of the three questions" before it—including whether arbitrators may decide the class-arbitration issue).
[9] Response at 14.
[10] *Stolt-Nielsen* at 1777 (Ginsburg, J, dissenting).

(even under Benson's logic) that the Supreme Court *does* view the class-arbitration question as a judicial one. But one may *not* conclude, as the *Pedcor* panel erroneously did, that the issue is "for the arbitrator, not the courts, to decide."[11] Were that true, the Court would never have undertaken a *de novo* review and decided the issue itself.

Benson also asserts that courts may not decide the class-arbitration issue because it involves only "the kind of arbitration proceeding the parties agreed to"—as if it were simply a question of what procedural path the arbitration should take.[12] But the majority in *Stolt-Nielsen* rejected the same line of thought:

> The dissent minimizes these crucial differences [between bilateral and class arbitration] by characterizing the question before the arbitrators as being merely what "procedural mode" was available … . If the question were that simple, there would be no need to consider the parties' intent with respect to class arbitration. … Contrary to the dissent, … we see the question as being <u>whether the parties *agreed to authorize* class arbitration</u>.[13]

The Supreme Court's language here is important for two reasons. First, as stated, the *Court itself* decided the question, and thus one cannot conclude that the issue is reserved for arbitrators. Second, in framing the issue as "whether the parties *agreed to authorize* class arbitration," the Court places the issue in the "arbitrability" category—i.e., the category of issues that *courts* must decide. Even Benson ultimately defines the issue as "the arbitrability of class claims."[14] On this point the parties can agree. And on this point, the debate ends, as the Supreme Court has repeatedly held that courts (not arbitrators) must decide questions of arbitrability.[15] As the Court recently explained in *Granite Rock Co. v. Int'l Brotherhood of Teamsters*,[16] arbitration "is a way to resolve those disputes—*but only those disputes*—that the

---

[11] *Pedcor* at 359.
[12] Response at 15 n.9.
[13] *Stolt-Nielsen* at 1776 (italics in original; underscore added; citations omitted).
[14] Response at 14.
[15] *See, e.g.*, *AT&T Technologies*, *supra*, 475 U.S. at 649 ("[T]he question of arbitrability … is undeniably an issue for judicial determination.").
[16] 130 S.Ct. 2847 (2010).

3

parties have agreed to submit to arbitration."[17] If the question here is whether the parties have agreed to submit class claims to arbitration—which is how *Stolt-Nielsen*, CSA, and Benson all define it—then this Court must decide it, not the Arbitrator.

*Granite Rock* is also significant for another reason. The parties here disagree whether the arbitration agreement applies to Benson's claims only, or also to the claims of many other people whom this Court never compelled to arbitration. Critically, this is the very kind of dispute *Granite Rock* instructs courts to resolve:

> [O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* … its enforceability <u>or applicability to the dispute</u> is in issue. <u>Where a party contests either or both matters, "the court" must resolve the disagreement</u>.[18]

The Arbitrator thus lacked authority to resolve the parties' dispute over whether the agreement applies to "class claims." The ensuing Award lacks effect and must therefore be vacated.

**B.    The Arbitrator Exceeded His Authority By Imposing Class Arbitration Without any Legitimate Contractual Basis for Doing So.**

If Benson is to be believed, *Stolt-Nielsen* is meaningless. Benson's arguments rest on the notion that, while the Supreme Court requires some "contractual basis" for finding consent, it does not define what that contractual basis must be.[19] But while the Court did not reduce the concept to a specific formula—hardly surprising given that each state has its own laws governing contract construction[20]—it is safe to assume that the Court never intended to permit loopholes

---

[17] *Id.* at 2857 (emphasis in original) (quoting *First Options*, *supra*, 514 U.S. at 943).

[18] *Id.* at 2857-58 (italics in original; underscore added; citations omitted).

[19] *See*, *e.g.*, Response at 7 n.2 ("[T]he Court had 'no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration.'"), *id.* at 10 ("This is exactly what the Arbitrator did in this case. He based his Award on that 'something else' identified by the Supreme Court in Stolt-Nielsen as sufficient—a contractual basis.").

[20] For example, in some states' laws impose a default rule that silent contracts are read to authorize class arbitration. *See Bazzle* at 450 (South Carolina Supreme Court held that silent contracts confer consent); *cf. New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 7 (1st Cir. 1988) (observing that consent is not a prerequisite to consolidated arbitration under Massachusetts law). Critically, Texas is not one of those states—quite the opposite. Texas courts will not add to a contract's terms unless the added term was so clearly contemplated by the parties that they deemed it unnecessary to express it. *See* CSA's brief at 20-21. Those facts admittedly do not exist here.

that would strip its decision of any significance. Yet that is effectively what Benson advocates here. He defends the Arbitrator's decision not by showing how it upholds *Stolt-Nielsen's* prohibition against imposing class arbitration without consent, but by explaining how that prohibition must yield to whatever doctrines an arbitrator decides to invoke.

    **1.    Benson Fails To Identify any Material Differences Between This Case and *Stolt-Nielsen*.**

Benson understandably wants to distinguish this case from *Stolt-Nielsen*. His central point is that, unlike the *Stolt-Nielsen* claimants, he "has never conceded there was 'no agreement.'"[21] But the absence of such a concession is immaterial here for two reasons. First, the "stipulation" in *Stolt-Nielsen* is not as momentous as Benson seems to believe. There, the claimant's attorney declared that "[a]ll the parties agree that when a contract is silent on an issue there's been no agreement that has been reached on that issue."[22] The attorney then qualified his statement by adding: "It's also undisputed that the arbitration clause here contains broad language and this language should be interpreted to permit class arbitrations."[23] This watered-down "stipulation" is no different from the Arbitrator's view in this case—i.e., that the parties never discussed class arbitration, but that the agreement is broad enough to encompass it.[24]

Second, and more to the point, it makes no difference whether the parties stipulated that they reached "no agreement," because ultimately everyone agrees that they never discussed class arbitration at all. Not only did the Arbitrator so determine,[25] but Benson himself agrees, repeatedly describing the Arbitration Clause as a "contract of adhesion" in which the parties

---

[21] Response at 13.
[22] *Stolt-Nielsen* at 1766.
[23] *Id.* at 1781 (Ginsburg, J., dissenting).
[24] *See* CSA's App'x at 8:23-24 ("[H]ere the arbitration agreement is completely silent on the question of whether class arbitration is permitted."); *id.* at 7:15-18 ("It is safe to assume that … the parties did not discuss whether their arbitration agreement would authorize class arbitration."); *id.* at 9:9-18 (finding that the phrase "any dispute or claim" is broad language that permitted Arbitrator to supply an "omitted" term imposing class procedures).
[25] *See id.* at 7:15-18 ("It is safe to assume that … the parties did not discuss whether their arbitration agreement would authorize class arbitration.").

5

never discussed anything at all.[26] An undisputed finding that the parties did not contemplate class arbitration in their discussions is every bit as good as a "stipulation" to the same effect. Benson's attempt to distinguish this case from *Stolt-Nielsen* thus fails.

> 2. **The Arbitrator's Reasons for Imposing Class Arbitration Lack any Factual or Legal Support and Violate *Stolt-Nielsen*.**

CSA showed in its opening brief that the Arbitrator improperly used various legal devices to supply a "missing" term he viewed as "essential" to the parties' agreement, even though the parties never discussed such a term. Like the arbitration panel in *Stolt-Nielsen*, the Arbitrator failed to invoke any rule of law that "governs in [this] situation," and failed to identify any "'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent."[27] Instead, he arbitrarily declared class arbitration an "essential" term of the agreement. Using that unsupported conclusion as a springboard, he employed inapplicable legal principles to create an outcome that is both unjust and unimagined by the parties.

For example, CSA showed in its brief that the Arbitrator's invocation of Restatement (Second) of Contracts § 204 impermissibly creates a default rule that class arbitration will be authorized unless expressly prohibited.[28] Benson responds by citing *Stolt-Nielsen's* unremarkable recognition that Section 204 does indeed apply "in certain contexts."[29] He then glosses over the Court's conclusion that Section 204 did *not* govern in that case, and fails to justify its application here. And like the Arbitrator, he fails to explain how class arbitration is

---

[26] *See* Response at 7 ("[T]he parties never discussed [class arbitration] … as would always be the case in a contract of adhesion in which *no* terms are discussed by its very nature.") (emphasis in original); *id.* at 10, n.5 ("[T]he Arbitrator was merely stating the obvious that … the parties understandably had not discussed [class arbitration]."). Not only did the parties never discuss class arbitration, but Benson does not even remember signing the agreement in the first place. *See* Benson's Notice of Non-Opposition to Motion to Stay and Compel Arbitration at 1 (Benson "did not recall signing such an [Arbitration] agreement before or during his employment or before filing suit.") (Docket No. 14). It is difficult to understand how Benson could have "consented" to class arbitration when he did not discuss the matter and in fact did not remember the agreement at all.
[27] *Stolt-Nielsen* at 1768-69. Again, no such default rule exists in Texas. *See* note 20, *supra*.
[28] *See* CSA's brief at 15-16.
[29] *Stolt-Nielsen* at 1775; Response at 9.

6

"essential to a determination of [the parties'] rights and duties"—the only situation in which Section 204 applies. Indeed, Benson cannot explain it, because there is no doubt that he can determine his rights and duties without inviting a multitude of "absent class members" to the proceedings.[30] Class arbitration is therefore not "essential" to the agreement in any way; and thus Section 204 cannot apply.[31]

If the Arbitrator is allowed to impose class arbitration by capriciously declaring that class arbitration is an "essential term" to a silent agreement, then *Stolt-Nielsen* is meaningless. Under such a rule, contracting parties will end up being subjected to class arbitration unless they expressly prohibit it in their arbitration agreements. Yet that is precisely the kind of rule *Stolt-Nielsen* rejected:

> The critical point, in the view of the arbitration panel, was that petitioners did not "establish that the parties … intended to *preclude* class arbitration." … The panel's conclusion is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent.[32]

The Arbitrator's conclusion here likewise conflicts with the FAA, for the same reason.

CSA has also provided several reasons why the Arbitrator disregarded Texas law by misusing the doctrine of *expressio unius est exclusio alterius* ("EUEEA"). While Benson offers his own view of how the doctrine works—without citing any authority—he misses the fundamental point: EUEEA does not apply when, as here, the agreement is not ambiguous. The Arbitrator never found that the agreement was ambiguous, and indeed Benson repeatedly argued that it was not.[33] Accordingly, there can be no dispute that the Arbitrator should never have used

---

[30] *See* Response at 24 (referring to the additional parties as "absent class members"). Notably, Benson wants to compound the burden on CSA by seeking a Rule-23-style opt-out class action as opposed to an FLSA opt-in action.

[31] Also lost on Benson is the fact that the Supreme Court cites Section 204 while discussing whether the arbitrator may "adopt such procedures as are necessary to give effect to the agreement." *Stolt-Nielsen* at 1775. But as stated above, the Court also says that imposing class arbitration is *not* a mere procedural question. *Id.* at 1776. Thus, despite what Benson says, the Supreme Court's discussion of Section 204 does not support any conclusion that Section 204 may be used to impose class arbitration where the underlying agreement is silent and the parties never even discussed the issue in the first place.

[32] *Stolt-Nielsen* at 1775 (emphasis in original).

[33] *See* Benson's clause-construction memorandum at 2, 5, 10, 11 (attached to Benson's Response as Exhibit B).

EUEEA to foist class arbitration on CSA.[34] Such improper use of inapplicable legal doctrines merely moves the goalposts and impermissibly frustrates CSA's legitimate expectations under Texas law.[35]

CSA also showed how the Arbitrator exceeded his powers by effectively punishing CSA for pursuing its right to compel arbitration.[36] The Arbitrator speculated that, because Benson pleaded the case as a collective action, CSA must have consented to class proceedings when it sought to compel arbitration.[37] Benson now piles on, arguing that CSA should have taken various steps to avoid such a result. His argument is deficient in several respects.

First, this Court's order compelling arbitration did not order anyone but Benson to file an arbitration claim; nowhere did it refer to any putative class members.[38] This is not surprising given that: (1) no class had been certified; (2) Benson is the only person CSA moved to compel to arbitration;[39] and (3) Benson himself agreed he had filed the case improperly, explaining that he did not recall his prior agreement "to arbitrate *his claim*"—i.e., no one else's claims.[40] Given this record, the Arbitrator's conjecture that CSA tacitly consented to class arbitration is utterly unfounded and contrary to the undisputed facts.

Second, although Benson now purports to critique CSA's actions in seeking to compel arbitration, he fails to recognize that his own omissions might easily be taken for sandbagging. He suggests that CSA should have foreseen his attempt to pursue class arbitration and then acted

---

[34] As a related matter, CSA also showed that the "any and all claims" language in the Arbitration Clause cannot be read to authorize class arbitration. CSA's brief at 20. Benson tries to minimize Judge Rakoff's opinion on this subject in *Jock v. Sterling Jewelers Inc.*, Case No. 08-CV-2875 (S.D.N.Y. Jul. 26, 2010) because at the time it was an indicative opinion. But on August 6, 2010, Judge Rakoff converted the decision into a binding order. *See* Order Vacating Award, Supp. App'x at 1. Importantly, Judge Rakoff is no stranger to *Stolt-Nielsen*; in fact, he was the District Judge in that case whose decision the Second Circuit reversed and the Supreme Court then vindicated.

[35] *Stolt-Nielsen* at 1774-75 ("[C]ourts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'") (quoting *Volt Information Sciences, Inc. v. Board of Trustees.*, 489 U.S. 468, 479 (1989)).

[36] *See* CSA's brief at 23.

[37] CSA's App'x at 11:4-14.

[38] Docket No. 15.

[39] Docket No. 7.

[40] *See* Notice of Non-Opposition at 1 (Docket No. 14) (emphasis added).

to forestall it—but he forgets that he never made his intentions known until *after* this Court entered its order. Had Benson disclosed his plan earlier or notified this Court that he intended to proceed on a class-wide basis, then perhaps CSA or the Court could have addressed the issue back then (as *Granite Rock* instructs), thereby avoiding the present dispute. As it stands, Benson chose to obscure his agenda, file a "Notice of Non-Opposition," and ambush CSA with a putative class arbitration when he filed his claim with the AAA. He now tries to deflect any criticism for his conduct by criticizing CSA for not predicting what he would do.

The reality is that CSA could neither control Benson's admittedly improper pleadings nor read his mind. The Arbitrator's finding to the contrary is not only baseless, it has nothing to do with the parties' prior agreement; thus it cannot legitimately serve as a "contractual basis" for forcing CSA to undergo class arbitration. For this additional reason, the Arbitrator exceeded his authority under the parties' Agreement.

C.  **If the Court Does Not Vacate the Award, It Should Stay the Arbitration So That CSA May Appeal the Issue to the Fifth Circuit.**

Benson asks the Court to deny CSA's request for a stay under 9 U.S.C. § 12. He says that, because he has not yet filed a proceeding to enforce the Award, CSA may not obtain a stay.[41] In so doing, Benson fails to realize that the Award is self-executing and does not require a separate enforcement proceeding. The Award is currently being enforced by the Arbitrator, who has decided to proceed with a class arbitration rather than staying it pending this Court's decision on CSA's present motion.[42] The statute gives this Court the power to stay "proceedings … to enforce the award."[43] The ongoing arbitration proceedings fit that description.

Granting a stay now will also promote judicial economy. CSA has raised an important threshold issue that will have a profound impact on how the arbitration ultimately proceeds and

---

[41] Response at 24.
[42] *See id.* ("CSA's request to stay the arbitration proceedings has already been denied by the Arbitrator … .").
[43] 9 U.S.C. §12.

9

the level of resources it consumes. It makes good sense to stay this arbitration and allow the issue to be resolved before irrevocably expending those resources. If CSA ultimately prevails on the issue, then any class-arbitration proceedings that have occurred in the meantime will have been an extraordinary waste of time, effort and money for everyone involved.

Finally, Benson asks the Court to toll limitations for "absent class members."[44] Yet he fails to mention that the entire putative class was recently sent notice of their alleged claims in conjunction with another lawsuit currently being handled by his counsel.[45] Because the "absent class members" have already been notified of their potential claims, and are free to file proceedings of their own, there is no legal justification for tolling the statute of limitations.[46] Benson's request for a tolling order should therefore be denied.

### D.    Conclusion

For all of the foregoing reasons, the Court should vacate the Award and find that CSA did not consent to class procedures. Should the Court deny CSA's motion, CSA respectfully asks that the Court stay the arbitration proceedings pending an appeal of this matter to the Fifth Circuit Court of Appeals.

                                                                                    Respectfully submitted,

                                                                                    SEYFARTH SHAW LLP

                                                                                    By:  s/ John L. Collins
                                                                                           John L. Collins
                                                                                           SEYFARTH SHAW LLP
                                                                                           State Bar No. 00796025
                                                                                           700 Louisiana Street, Suite 3700
                                                                                           Houston, Texas  77002
                                                                                           (713) 225-2300 – Telephone

---

[44] Response at 24.
[45] *Willins v. Credit Solutions of America, Inc.*, Case No. 3:09-cv-01025-M (N.D. Tex.).
[46] *See, e.g., Sims v. Housing. Auth. of El Paso*, No. EP-10-CV-109-KC, 2010 WL 3221790, at *3 (W.D. Tex. Aug. 13, 2010) ("To invoke equitable tolling for the pre-opt-in period, … Plaintiffs must show that they diligently pursued their rights yet were '*unable to discover essential information bearing on the existence*' of their claim.") (quoting *Pacheco v. Rice*, 966 F.2d 904, 906-907 (5th Cir. 1992)) (emphasis added).

12712925v.3

             (713) 225-2340 – Facsimile
             jcollins@seyfarth.com

OF COUNSEL:

SEYFARTH SHAW LLP
Robert J. Carty, Jr.
State Bar No. 00788794
Kate L. Birenbaum
State Bar No. 00787087
Clayton D. Craighead
State Bar No. 24065092
700 Louisiana Street, Suite 3700
Houston, Texas  77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile
rcarty@seyfarth.com
kbirenbaum@seyfarth.com
ccraighead@seyfarth.com


John Greco
State Bar No. 24050686
Assistant General Counsel
CSA - Credit Solutions of America, LLC
12700 Park Central Dr., 21st Floor
Dallas, Texas 75251
(972) 763 - 7135 - Telephone
(214) 678-7151 - Facsimile
jgreco@creditsolutions.com

**CERTIFICATE OF SERVICE**

  I hereby certify that, on September 28, 2010, true and correct copies of the foregoing pleading were served on all counsel of record, as listed below, via ECF filing and/or United States mail.

J. Derek Braziel, Esq.
Meredith Mathews, Esq.
Lee & Braziel, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202

Robert J. Camp
The Cochran Law Firm, PC
505 20th Street North, Suite 825
Birmingham, Alabama 35203

            s/ John L. Collins
            John L. Collins

12712925v.3